IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KAAVO INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-638 (LPS) (CJB) |
| | ) | |
| AMAZON.COM, INC. and AMAZON WEB SERVICES, INC., | ) ) | |
| | ) | |
| Defendants. | ) | |

**AMAZON'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS FOR FAILURE TO CLAIM
<u>PATENT ELIGIBLE SUBJECT MATTER UNDER 35 U.S.C. § 101</u>**

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|  | Karen Jacobs (#2881) |
|  | Megan E. Dellinger (#5739) |
|  | 1201 North Market Street |
|  | P.O. Box 1347 |
| OF COUNSEL: | Wilmington, DE  19899-1347 |
|  | (302) 658-9200 |
| Alan M. Fisch | kjacobs@mnat.com |
| R. William Sigler | mdellinger@mnat.com |
| Jeffrey Saltman | *Attorneys for Amazon.com, Inc. and* |
| Jennifer K. Robinson | *Amazon Web Services, Inc.* |
| FISCH SIGLER LLP |  |
| 5301 Wisconsin Avenue, NW |  |
| Fourth Floor |  |
| Washington, DC  20015 |  |
| (202) 362-3500 |  |

David Saunders
FISCH SIGLER LLP
96 North Third Street
Suite 260
San Jose, CA  95112
(650) 362-8200

September 25, 2015

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

I. NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 3

II. SUMMARY OF THE ARGUMENT ................................................................................ 3

III. STATEMENT OF FACTS ................................................................................................ 4

    A. The Independent Claims Are Directed to Setting Up and Managing a Computing Environment ............................................................................. 4

    B. The Dependent Claims Add Nothing Inventive ....................................................... 7

IV. ARGUMENT ..................................................................................................................... 7

    A. The '751 Patent Claims Are Directed to an Abstract Idea ..................................... 9

    B. The '751 Patent Claims Lack an Inventive Concept ............................................ 11

CONCLUSION .............................................................................................................................. 13

## TABLE OF AUTHORITIES

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013) .................................................................................. 8, 12

*Alice Corp. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014) ................................................................................................ passim

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
  No. 1:10-cv-910 (LMB/TRJ), 2014 U.S. Dist. LEXIS 152447 (E.D. Va. Oct. 24, 2014) .......... 2

*Appistry, Inc. v. Amazon.com, Inc.*,
  No. 2:15-CV-311-MJP, 2015 U.S. Dist. LEXIS 90004 (W.D. Wash. July 9, 2015) ................. 1

*BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig. v. Ambry Genetics Corp.*,
  774 F.3d 755 (Fed. Cir. 2014) .......................................................................................... 3

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014) ................................................................................... 3, 12

*CLS Bank Int'l v. Alice Corp.*,
  717 F.3d 1269 (Fed. Cir. 2013) .......................................................................................... 1

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
  776 F.3d 1343 (Fed. Cir. 2014) ................................................................................ passim

*Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014) .......................................................................................... 3

*Enpat, Inc. v. Tenrox, Inc.*,
  No. 6:13-cv-948-Orl-31KRS, 2015 U.S. Dist. LEXIS 15931 (M.D. Fla. Feb. 10, 2015) .... 2, 12

*Everglades Game Techs., LLC v. Supercell, Inc.*,
  No. 14-643-GMS, 2015 WL 4999654 (D. Del. Aug. 21, 2015) ........................................... 8

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
  No. 2014-1506, 2015 U.S. App. LEXIS 11537 (Fed. Cir. July 6, 2015) ................................ 2

*Intellectual Ventures I LLC v. Symantec Corp.*,
  No. 10-1067-LPS, 2015 U.S. Dist. LEXIS 52527 (D. Del. Apr. 22, 2015), ......................... 10

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015) .......................................................................................... 2

*Jericho Sys. Corp. v. Axiomatics, Inc.*,
  No. 3:14-cv-2281-K, 2015 U.S. Dist. LEXIS 60421 (N.D. Tex. May 7, 2015) ....................... 2

*Kaavo, Inc. v. Cognizant Tech. Solutions, Corp.*,
  No. 14-1192-LPS-CJB (D. Del. May 27, 2015) ........................................................................ 4

*OIP Techs., Inc. v. Amazon.com, Inc.*,
  788 F.3d 1359 (Fed. Cir. 2015) ......................................................................................... 2, 8

*Open Text S.A. v. Box, Inc.*,
  No. 13-cv-04910-JD, 2015 U.S. Dist. LEXIS 6309 (N.D. Cal. Jan. 20, 2015) .......................... 2

*Planet Bingo, LLC v. VKGS LLC*,
  576 Fed. App'x 1005 (Fed. Cir. 2014) .................................................................................... 3

*Shortridge v. Found. Constr. Payroll Serv., LLC*,
  No. 14-cv-04850-JCS, 2015 U.S. Dist. LEXIS 49126 (N.D. Cal. Apr. 14, 2015) ..................... 2

*TriPlay, Inc. v. WhatsApp Inc.*,
  No. 13-1703-LPS, 2015 U.S. Dist. LEXIS 55068 (D. Del. Apr. 28, 2015) ........................... 1, 11

*Tuxis Techs., LLC v. Amazon.com, Inc.*,
  No. 13-1771-RGA, 2015 WL 1387815 (D. Del. Mar. 25, 2015) ............................................... 8

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014) ...................................................................................... 3, 8, 9

*Versata Dev. Group, Inc. v. SAP Am., Inc.*,
  No. 2014-1194, 2015 U.S. App. LEXIS 11802 (Fed. Cir. July 9, 2015) .................................... 2

*Wireless Media Innovations, LLC v. Maher Terminals, LLC*,
  Nos. 14-7004, -7006 (JLL), 2015 U.S. Dist. LEXIS 51811 (D.N.J. Apr. 20, 2015) .................. 2

**PRELIMINARY STATEMENT**

Kaavo conceded that "setting up and managing a computing environment" is an abstract idea in responding to a question posed by this Court in a related case.[1] The patent-in-suit here, U.S. Patent No. 9,043,751, teaches this exact idea. The '751 patent does this through making computing resources available and then managing the activities taking place on those resources. And the computing resources being managed in this process are nothing more than generic computers. Accordingly, the '751 patent should meet the same fate as the patents in *Alice Corp. v. CLS Bank Int'l*: invalidation.[2]

Courts are using *Alice* to return abstract ideas such as the one claimed in the '751 patent to their rightful owner—the public. Federal Circuit Judge Moore predicted that *Alice* would result in the "death of hundreds of thousands of patents, including all business method, financial system, and software patents as well as many computer implemented and telecommunications patents."[3] This prediction is coming true. In the 15 months since the Supreme Court's decision, district courts across our country have invalidated patents under *Alice* in more than 100 cases.[4]

---

[1] *See* Transcript of Oral Argument, *Kaavo Inc. v. Cognizant Tech. Solutions Corp.*, No. 14-1192-LPS-CJB (D. Del. May 27, 2015), at 61:2-12 ("THE COURT: Now, the abstract idea, as the defendants have called it out, although it's been clarified by Mr. Johnson is 'setting up and managing a computing environment.' Would you acknowledge that [] the abstract idea, phrased that way, is, in fact, an abstract idea? MR. WEINBLATT: In the way that he phrased it, yes, but that is ignoring claim elements.").

[2] *See* 134 S. Ct. 2347, 2358 (2014) ("[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention.").

[3] *CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269, 1313 (Fed. Cir. 2013) (Moore, J., dissenting).

[4] *See, e.g.*, *TriPlay, Inc. v. WhatsApp Inc.*, No. 13-1703-LPS, 2015 U.S. Dist. LEXIS 55068, at *30 (D. Del. Apr. 28, 2015) (recommending granting 12(b)(6) motion for invalidity under Section 101 for a claim directed to converting and forwarding messages using a computer, so that the messages are sent in a format and layout in which they can be received by a recipient) (recommendation to dismiss a claim adopted Aug. 10, 2015); *Appistry, Inc. v. Amazon.com, Inc.*, No. 2:15-CV-311-MJP, 2015 U.S. Dist. LEXIS 90004, at *6, *12 (W.D. Wash. July 9, 2015)

The Federal Circuit has done the same in 10 of its 11 post-*Alice* decisions.[5] Amazon respectfully requests that the '751 patent be added to this long list.

---

(granting Rule 12(c) motion for invalidity under Section 101 for patents directed to "distributed processing akin to the military's command and control system" with "networked computers operating as task directors, mid-level managers, and lower-level workers"); *Jericho Sys. Corp. v. Axiomatics, Inc.*, No. 3:14-cv-2281-K, 2015 U.S. Dist. LEXIS 60421, at *8-9 (N.D. Tex. May 7, 2015) (granting Rule 12(c) motion for invalidity under Section 101 for a patent directed to a method to process requests to access resources using computers); *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, Nos. 14-7004, -7006 (JLL), 2015 U.S. Dist. LEXIS 51811, at *19 (D.N.J. Apr. 20, 2015) (granting Rule 12(b)(6) motion for invalidity under Section 101 for patents directed to monitoring locations, movement, and status of resources and storing and communicating this information through generic computer functions); *Shortridge v. Found. Constr. Payroll Serv., LLC*, No. 14-cv-04850-JCS, 2015 U.S. Dist. LEXIS 49126, at *3-4 (N.D. Cal. Apr. 14, 2015) (granting Rule 12(c) motion for invalidity under Section 101 for a patent directed to using computers to provide alerts and reports allowing a contractor to choose manpower options and provide evidence of managing the assignment of personnel"); *Enpat, Inc. v. Tenrox, Inc.*, No. 6:13-cv-948-Orl-31KRS, 2015 U.S. Dist. LEXIS 15931, at *7 (M.D. Fla. Feb. 10, 2015) (granting summary judgment motion for invalidity under Section 101 for a patent directed to "one facet of project management with a computer filling the role of the project manager, shuffling a limited supply of resources among tasks with differing priorities and prerequisites"); *Open Text S.A. v. Box, Inc.*, No. 13-cv-04910-JD, 2015 U.S. Dist. LEXIS 6309, at *6 (N.D. Cal. Jan. 20, 2015) (granting Rule 12(c) motion for invalidity under Section 101 for patents directed to using a "workgroup creator" on a computer "for creating a dedicated network site in response to received instructions"); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, No. 1:10-cv-910 (LMB/TRJ), 2014 U.S. Dist. LEXIS 152447, at *11-26 (E.D. Va. Oct. 24, 2014) (granting Rule 12(c) motion for invalidity under Section 101 for patents directed to, *inter alia*, monitoring and reporting network resource usage); *Eclipse IP LLC v. McKinley Equipment Corp.*, No. CV 14-154, 2014 U.S. Dist. LEXIS 125395, at *21 (C.D. Cal. Sept. 4, 2014) (granting Rule 12(b)(6) motion for invalidity under Section 101 for claims directed to using a computer system to manage resources by asking a resource to perform a task, and if it does not complete the task, asking another resource).

[5] *See Versata Dev. Group, Inc. v. SAP Am., Inc.*, No. 2014-1194, 2015 U.S. App. LEXIS 11802 (Fed. Cir. July 9, 2015) (affirming CBM final written decision invalidating claims directed to determining price using organizational and product group hierarchies as performed by a generic computer); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, No. 2014-1506, 2015 U.S. App. LEXIS 11537 (Fed. Cir. July 6, 2015) (affirming summary judgment for invalidity under Section 101 of claims directed to budgeting and customizing information using generic computer elements); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015) (affirming dismissal for invalidity under Section 101 of claims directed to using a web browser's Back and Forward navigational functionalities without data loss); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015) (affirming judgment on the pleadings for invalidity under Section 101 of claims directed to automation of offer-based price optimization through the use of generic-computer functions); *Content Extraction & Transmission LLC v.*

I.      NATURE AND STAGE OF THE PROCEEDINGS

Kaavo has filed complaints alleging infringement of the '751 patent against Amazon.com, Inc. and Amazon Web Services, Inc. (C.A. No.15-638), BMC Software, Inc. (C.A. No. 15-639), Cognizant Technology Solutions (C.A. No. 15-641), and Tier 3, Inc., Appfog, Inc., and Saavis Communications Corp. (C.A. No. 15-640).[6]

II.     SUMMARY OF THE ARGUMENT

The '751 patent recites the abstract idea of setting up and managing a collection of generic computers. The '751 patent is thus expressly the type that the Supreme Court has deemed unpatentable—one claiming an abstract idea implemented on generic computers. Accordingly, Amazon moves to dismiss Kaavo's complaint under 35 U.S.C. § 101.

---

*Wells Fargo Bank, N.A.*, 776 F.3d 1343 (Fed. Cir. 2014) (affirming dismissal for invalidity under Section 101 of claims directed to data collection, recognition, and storage using a scanner and computer); *BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig. v. Ambry Genetics Corp.*, 774 F.3d 755 (Fed. Cir. 2014) (affirming denial of motion for preliminary injunction and invalidating under Section 101 claims directed to comparing and analyzing gene sequences); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014) (affirming dismissal for invalidity under Section 101 of claims directed to using advertising as an exchange or currency over the Internet using a computer); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) (affirming judgment on the pleadings for invalidity under Section 101 of claims directed to creating a contractual relationship using a computer and network); *Planet Bingo, LLC v. VKGS LLC*, 576 Fed. App'x 1005 (Fed. Cir. 2014) (affirming summary judgment for invalidity under Section 101 of claims directed to computer-aided management of bingo games); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014) (affirming summary judgment of invalidity under Section 101 of patent claims directed to generating and using a device profile, a collection of information for a device in a digital image processing system).

[6] D.I. 1 at ¶ 22. Kaavo previously filed complaints alleging infringement of U.S. Patent No. 8,271,974, the parent of the '751 patent at issue here. C.A. Nos. 14-1191, -1192, -1193, -1194, -353, -354, -355, -356. A motion to dismiss the '974 patent for lack of patent eligibility under § 101 is sub judice in those actions. (*E.g.*, D.I. 19 in C.A. No. 14-1193.) The '974 patent cases are currently stayed pending the Court's decision on that motion. (*E.g.*, D.I. 38 in C.A. No. 14-1193.)

### III. STATEMENT OF FACTS

#### A. The Independent Claims Are Directed to Setting Up and Managing a Computing Environment

The '751 patent teaches setting up and managing a computing environment. Kaavo has already conceded that setting up and managing a computing environment is an abstract idea. The '751 patent's independent claims teach setting up and managing a computing environment via two steps. First, information is sent that makes computing resources available for use, and then further information is sent that causes those computing resources to be used.[7] Claim 11 is representative of this process. Specifically, the first step in claim 11 sets up a computing environment:

> sending, by a computer system, an initialization event based on provisioning information in a single file, the initialization event causing two or more tiers of a cloud environment configuration to be made available to a software application

Accordingly, the "initialization event" makes a computing environment available to a software application. That environment is "two or more tiers of a cloud environment configuration."[8] Further, the chosen cloud environment configuration must meet certain requirements, called "provisioning information." Claim 11 states: "wherein the provisioning information comprises types of servers to launch in each tier, geographic data, security requirement data, pricing preference data, and versioning data."

The second step in claim 11 manages the chosen computing environment by causing software to execute within the environment:

---

[7] *See, e.g.*, '751 patent at claim 11.

[8] Kaavo explained for the parent patent that: "A tier is a logical grouping of implements directed to a general-type functionality. And N-tier is one or more tiers." Transcript of Oral Argument, *Kaavo Inc. v. Cognizant Tech. Solutions Corp.*, C.A. No. 14-1192-LPS-CJB (D. Del. May 27, 2015), at 42:22-43:1.

>   subsequently sending, by the computer system, software application data to the cloud environment configuration, which, upon receipt, causes the software application to begin execution in the available tiers of the cloud environment configuration

These steps occur on standard, generic computing resources. Indeed, the specification teaches that the method is implemented on any "computer having a processor (e.g., one or more integrated circuits) programmed with firm-ware and/or running software."[9] The computer may use "a general purpose CPU or microprocessor"[10] and conventional memory.[11] The "computer readable media" recited in other claims "includes any physical medium that can store or transfer information."[12] Further, the generic computing resources are connected by "any type of communications network."[13] Indeed, the '751 patent states that "any" suitable device or structure may be used:

>   The present embodiments are not limited to the architecture of Fig. 4 or 5. For example *any suitable processor-based device may be utilized* including without limitation, including personal data assistants (PDAs), computer game consoles,

---

[9] '751 patent at 16:46-49 ("Some (up to all) of the steps described in the sections above may be implemented using a computer having a processor (e.g., one or more integrated circuits) programmed with firm-ware and/or running software.").

[10] *Id.* at 11:29-30 ("CPU 502 may be a general purpose CPU or microprocessor").

[11] *Id.* at 11:37-39 ("System 10 also may include Random Access Memory (RAM) 508, which may be SRAM, DRAM, SDRAM, or the like."), 11:42-44 ("System 10 may also include Read Only Memory (ROM) 506 which may be PROM, EPROM, EEPROM, or the like.").

[12] *Id.* at 12:14-21 ("Computer readable media includes any physical medium that can store or transfer information. Such embodiments may be characterized as tangible computer readable media having (or encoded with) computer usable (e.g., machine readable) instructions for performing certain step(s), including but not limited to hard drive media, optical media, RAM, SRAM, DRAM, SDRAM, ROM, EPROM, EEPROM, tape media, cartridge media, flash memory, memory stick, and/or the like.").

[13] *Id.* at 11:18-25 ("Network 408 may include any type of communications network including, but not limited to, a direct PC to PC connection, a local area network (LAN), a wide area network (WAN), a modem to modem connection, the Internet, a combination of the above, or any other communications network now known or later developed within the networking arts which permits two or more computers to communicate, one with another.").

and multi-processor servers. Moreover, the present embodiments may be implemented on application specific integrated circuits (ASIC) or very large scale integrated (VLSI) circuits. In fact, persons of ordinary skill in the art may utilize *any number of suitable structures capable of executing logical operations* according to the described embodiments.[14]

The other independent claims—1, 5, 8, 15, and 18—cover the same abstract idea through the same two steps. Claim 15 recites the same steps as claim 11, but is drafted as a computer readable medium claim instead of a method claim. And claim 18 also recites the same steps as claim 11, but is drafted as a system claim. Claim 1 is a method claim that again comprises only two steps. Claim 1 further requires only that the "cloud environment," "cloud provider," and "initialization event" have additional limitations that are routine and conventional, not inventive.[15] Claim 5 recites the same steps as claim 1, but is drafted as a computer readable medium claim instead of a method claim. And claim 8 also recites the same steps as claim 1, but is drafted as a system claim. Accordingly, claim 11 is representative of all of the '751 patent's independent claims.[16]

---

[14] *Id.* at 11:66-12:9 (emphasis added).

[15] Specifically, these routine and conventional requirements are: "the cloud environment comprises a plurality of distinct cloud configurations, each cloud configuration provided by a unique cloud provider, and multiple tiers of computing facilities, each tier being characterized by logical groupings of components directed to a general type of functionality, wherein each cloud provider's cloud configuration contributes all, a portion, or none of each individual tier of the N-tier cloud environment, and the initialization event includes information specifying different cloud configurations of each of the different cloud providers to launch in each tier …."

[16] *See Content Extraction*, 776 F.3d at 1348 ("The district court, however, correctly determined that addressing each claim of the asserted patents was unnecessary. After conducting its own analysis, the district court determined that PNC is correct that claim 1 of the '855 patent and claim 1 of the '416 patent are representative, because all the claims are 'substantially similar and linked to the same abstract idea.'").

### B.     The Dependent Claims Add Nothing Inventive

The dependent claims cover the same abstract idea as claim 11, adding only one or more of three routine and conventional elements that each relate to setting up and managing a computing environment.[17]

First, dependent claims 2, 6, 9, 12, 16, and 19 add a "monitoring" step, where information is received that represents a current cloud environment state.  Monitoring is a well-known component of managing a computing environment.  Second, dependent claims 3, 6, 9, 13, 16, and 19 add an "adjustment event" step, where adjustment information is sent in response to receiving the monitoring information.  Making adjustments is a well-known component of managing a computing environment.  Third, dependent claims 4, 7, 10, 14, 17, and 20 add that the provisioning information must include "service level agreement data."  For example, "service level agreement data" may be a requirement that the system be available 24 hours a day, 365 days a year.[18]  Requiring that the computer resources comply with such requirements is a well-known additional component of setting up an appropriate computing environment.  Thus, the additional elements recited in the dependent claims comprise only routine and conventional elements relating to setting up and managing a computing environment.

### IV.    ARGUMENT

In *Alice*, the Supreme Court explained that patent law does not allow for the monopolization of abstract ideas because they are the "building blocks of human ingenuity."[19]

---

[17] *See id.* at 1348.

[18] "Service level agreement data may include, for example, a user's desired service level (e.g., geographic redundancy, system availability) and the service level required for each cloud provider (e.g., monitored cloud provider performance compared to cloud provider specifications)." '751 patent at 7:37-42.

[19] *Alice*, 134 S. Ct. at 2354, 2359.

*Alice* set forth a two-part test, requiring a court to: (1) determine whether the claim is directed to an abstract idea; and (2) if so, determine whether the claim contains an "'inventive concept'— i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."[20]

Significantly, the Supreme Court identified that "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."[21] The Court explained that applying an abstract idea on a generic computer is "not enough for patent eligibility"[22] because "[g]iven the ubiquity of computers, wholly generic computer implementation is not generally the sort of 'additional featur[e]' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'"[23]

The Federal Circuit has endorsed deciding invalidity under Section 101 via a Rule 12(b)(6) motion.[24] This is unsurprising, as determining whether a claim is directed to patent-eligible subject matter is a question of law.[25]

---

[20] *Id.* at 2355.

[21] *Id.* at 2358.

[22] *Id.*

[23] *Id.*

[24] *See OIP*, 788 F.3d at 1362; *Content Extraction*, 776 F.3d at 1346 (affirming grant of motion to dismiss); *Ultramercial*, 772 F.3d at 711-12 (affirming grant of motion to dismiss); *Everglades Game Techs., LLC v. Supercell, Inc.*, No. 14-643-GMS, 2015 WL 4999654, at *1 (D. Del. Aug. 21, 2015) (granting motion to dismiss); *Tuxis Techs., LLC v. Amazon.com, Inc.*, No. 13-1771-RGA, 2015 WL 1387815, at *1 (D. Del. Mar. 25, 2015) (granting motion to dismiss).

[25] *See Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013).

### A.     The '751 Patent Claims Are Directed to an Abstract Idea

The '751 patent claims are directed to setting up and managing a computing environment. This is an abstract idea. Kaavo has already acknowledged this. As such, the '751 patent meets the first part of the *Alice* test.

The Federal Circuit commands that a review of the claim as a whole teaches whether it is directed to an abstract idea. For example, the Federal Circuit in *Ultramercial* analyzed whether "the concept embodied by the majority of the limitations" described only an abstract idea.[26] Here, the majority of the limitations in the claims teach aspects of setting up and managing a computing environment. Representative claim 11, for example, recites sending information to set up and make available a computing environment. Claim 11 also recites subsequently sending information causing software to run in the computing environment. Claim 11, as well as the other independent claims, fails to teach anything further than such basic steps of setting up and managing a computing environment. And the dependent claims add only limitations further describing aspects of setting up a computing environment (i.e., service level agreement data) or managing a computing environment (i.e., monitoring and adjusting the computing environment). Thus, the claims are directed to setting up and managing a computing environment, which Kaavo has conceded is abstract.

To be sure, humans have engaged in the creation and management of computing resources since the advent of the first computers. When computers were as big as a house, and cost twice as much, every minute of processing time was exceptionally expensive. And to obtain the maximum value from these expensive systems, human scientists and engineers set up and managed these resources to achieve the greatest efficiency. Over time, the price of computing

---

[26] *Ultramercial*, 772 F.3d at 715 (affirming invalidity).

power dropped below the cost of human power, resulting is a shift in responsibilities for setting up and managing the efficiency of computer systems from man to machine. Indeed, the '751 patent provides a classic example of using a computer to perform a method that a human could perform by "head and hand." As this Court has held, such methods "are the types of methods that embody the 'basic tools of scientific and technological work' that are free to all men and reserved exclusively to none."[27] Kaavo should no longer be permitted to hold monopoly power over this basic method of sending data.

In arguing that the '751 patent's parent is not directed to an abstract idea, Kaavo relied on *DDR Holdings, LLC v. Hotels.com, L.P.*, the only one of eleven post-*Alice* Federal Circuit decisions that upheld the validity of a patent. But *DDR* does not apply here. In *DDR*, the Federal Circuit found that the patent did not cover an abstract idea, noting that "the claimed solution [wa]s necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks."[28] But here Kaavo has already conceded that setting up and managing a computing environment is an abstract idea. And as this Court has recognized, that the "realm of electronic communications provides the setting in which the claims are introduced" is immaterial; claims are nonetheless invalid under 101 if "the majority of

---

[27] *See Intellectual Ventures I LLC v. Symantec Corp.*, No. 10-1067-LPS, 2015 U.S. Dist. LEXIS 52527, at *23 (D. Del. Apr. 22, 2015), (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011)); *see also Content Extraction*, 776 F.3d at 1358 ("Applying *Mayo/Alice* step one, we agree with the district court that the claims of the asserted patents are drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory. The concept of data collection, recognition, and storage is undisputedly well-known. Indeed, humans have always performed these functions.").

[28] *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014).

th[e] claim language speaks to an abstract idea …."[29] As such, the fact that the '751 patent uses computing as the setting does not salvage the claims from invalidation.

### B. The '751 Patent Claims Lack an Inventive Concept

The remaining question under *Alice* is whether Kaavo's claims recite "additional elements" sufficient to "transform" the claims into a patent-eligible application of this abstract idea.[30] They do not.

In *Alice*, the Supreme Court held that the invocation of a "wholly generic computer implementation" was not enough to make the claims patent-eligible,[31] particularly where (1) all of the claimed computer functions were "'well-understood, routine, conventional activities' previously known to the industry," and (2) the claims did not "purport to improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field."[32] As in *Alice*, the claims here are implemented with wholly generic computers through well-understood, routine, conventional activities, and do not improve the functioning of the generic computers.[33] Thus, that the '751 patent replaces the human scientists and engineers of old with generic computers does not render the claims any less abstract.

---

[29] *TriPlay*, 2015 U.S. Dist. LEXIS 55068, at *39.

[30] *Alice*, 134 S. Ct. at 2355.

[31] *Id.* at 2358.

[32] *Id.* at 2350-51.

[33] *Id.* at 2350. Claim 11 is representative for the second part of the *Alice* test because all the claims are substantially similar and linked to the same abstract idea, as discussed *supra*, in Sections III and IV(a). The additional limitations in the dependent claims are (1) "'well-understood, routine, conventional activities' previously known to the industry," and (2) do not "purport to improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field." They "add nothing of practical significance to the underlying abstract idea." Accordingly, like representative claim 11, each of the '751 patent's other claims are invalid under Section 101.

In particular, the two steps in each claim require only "sending" information by generic computers connected through a generic network. Kaavo's patent thus amounts to nothing more than reciting an abstract idea implemented through generic computers, which *Alice* and its progeny have outlawed.[34] As the Federal Circuit explained in *buySAFE*, a post-*Alice* decision:

> *That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive.* The computers in *Alice* were receiving and sending information over networks connecting the intermediary to the other institutions involved, and the Court found the claimed role of the computers insufficient.[35]

And in a case similar to this one, *Enpat v. Tenrox*, the Middle District of Florida invalidated claims directed to "one facet of project management with a computer filling the role of the project manager, shuffling a limited supply of resources among tasks with differing priorities and prerequisites."[36] Kaavo's claims are invalid for the same reason—they cover setting up and managing computing resources.

Aside from the abstract idea embedded in the '751 claims, the remainder of the claim language comprises the description of routine and conventional steps, accomplished using computer hardware and software recited in purely functional and generic terms. Thus, the '751 patent's use of generic computers does not transform the claimed abstract idea into a patentable invention.

---

[34] *Alice*, 134 S. Ct. at 2358.

[35] *buySAFE*, 765 F.3d at 1355 (emphasis added).

[36] *Enpat*, 2015 U.S. Dist. LEXIS 15931, at *7; *see also Accenture*, 728 F.3d at 1338-39 (holding invalid claims directed to "determin[ing] what tasks need to be accomplished" and "assign[ing] those tasks" for completion using "a server component that interacts with the software components").

**CONCLUSION**

The unanimous *Alice* decision ended monopoly protection for abstract ideas using generic computers. This is exactly the protection that Kaavo claims today through its patent, which is directed to setting up and managing a computing environment. Amazon respectfully requests that the Court grant its motion to dismiss and return this concept to its rightful owner—the public.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Megan E. Dellinger*

Karen Jacobs (#2881)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
kjacobs@mnat.com
mdellinger@mnat.com
   *Attorneys for Amazon.com, Inc. and*
   *Amazon Web Services, Inc.*

OF COUNSEL:

Alan M. Fisch
R. William Sigler
Jeffrey Saltman
Jennifer K. Robinson
FISCH SIGLER LLP
5301 Wisconsin Avenue, NW
Fourth Floor
Washington, DC  20015
(202) 362-3500

David Saunders
FISCH SIGLER LLP
96 North Third Street
Suite 260
San Jose, CA  95112
(650) 362-8200

September 25, 2015

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2015, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 25, 2015 upon the following in the manner indicated:

| | |
|---|---|
| Stamatios Stamoulis<br>Richard C. Weinblatt<br>STAMOULIS & WEINBLATT LLC<br>Two Fox Point Centre<br>6 Denny Road, Suite 307<br>Wilmington, DE 19809 | *VIA ELECTRONIC MAIL* |

*/s/ Megan E. Dellinger*
Megan E. Dellinger (#5739)