IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KAAVO INC. | ) | |
| | ) | |
|   Plaintiff, | ) | |
| | ) | C.A. No. 1:15-cv-638-LPS-CJB |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| AMAZON.COM., INC. and | ) | |
| AMAZON WEB SERVICES, INC. | ) | |
| | ) | |
|   Defendants. | ) | |
| | ) | |

**PLAINTIFF KAAVO INC.'S OPPOSITION TO
AMAZON'S MOTION TO DISMISS**

STAMOULIS & WEINBLATT LLC

Stamatios Stamoulis #4606
Richard C. Weinblatt #5080
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone:  (302) 999-1540
stamoulis@swdelaw.com
weinblatt@swdelaw.com

*Attorneys for Plaintiff
Kaavo Inc.*

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ...................................................................................1

II.   NATURE AND STAGE OF PROCEEDINGS...........................................................1

III.  SUMMARY OF THE ARGUMENT ...........................................................................2

IV.    STATEMENT OF FACTS..........................................................................................2

V.   LEGAL STANDARD ..................................................................................................6

     A.    Rule 12(b)(6) Motion.........................................................................................6

     B.    Defendants' Clear and Convincing Burden of Proof.........................................7

     C.    Patentability Under 35 U.S.C. § 101 .................................................................8

VI.  ARGUMENT ................................................................................................................9

     A. The '751 Patent Claims Are Patentable Under the *Alice* Framework .................9

        1.   The Claims of the '751 Patent Are Not Directed to an Abstract Idea ...........10

        2.   The '751 Patent's Claims Provide a Patent-Eligible Inventive Concept .......13

     B. The Claims of the '751 Patent Are Not Overly Preemptive .................................18

     C. The Claims of the '751 Patent Improve an Existing Technological Process and Supply a New and Useful Application of the Idea ..........................................................20

VII. CONCLUSION ............................................................................................................20

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Abbot Labs v. Sandoz, Inc.*, 544 F.3d 1341 (Fed. Cir. 2008)...................................................7

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014)...................................passim

*Altoona Publix Theatres, Inc. v. American Tri-Ergon Corp.*, 294 U.S. 477 (U.S. 1935)...................8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................7

*Association for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107 (2013) ......10, 14, 18

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................7

*Bilski v. Kappos*, 561 U.S. 593 (2010) ...........................................................7, 8, 9, 19

*Byrd v. Bates*, 220 F.2d 480 (5th Cir. 1955) ...............................................................7

*Cameron Septic Tank Co. v. Village of Saratoga Springs*, 159 F. 453 (2d Cir. 1908) .....................19

*Commil USA, LLC v. Cisco Systems, Inc.*, 135 S. Ct. 1920 (2015)............................................7

*Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264 (Fed. Cir. 1991)......................................8

*Diamond v. Chakrabarty*, 447 U.S. 303 (1980)..............................................................18

*Diamond v. Diehr*, 450 U.S. 175 (1981)..............................................................passim

*Erickson v. Pardus*, 551 U.S. 89 (2007)...................................................................7

*Funk Brothers Seed Co. v. Kalo Co.*, 333 U.S. 127 (1948) ................................................19

*Gottschalk v. Benson*, 409 U.S. 63 (1972) ...............................................................9

*Harrington Mfg. Co. v. Powell Mfg. Co.*, 815 F.2d 1478 (Fed. Cir. 1986).................................7

*Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)............................................7

*In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) .........................................................8, 9

*Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015 ........................18

*Jones v. Hardy*, 727 F.2d 1524 (Fed. Cir. 1984).........................................................9

*King Pharms., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267 (Fed. Cir. 2010)..................................9

*Mackay Radio & Tel. Co. v. Radio Corp. of Am.*, 306 U.S. 86 (1939) ..............................................18

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012)..........passim

*Morgan v. Scott*, 83 F. Supp. 3d 616 (D. Del. 2015) ........................................................15

*Nazomi Communications, Inc. v. Samsung Telecommunications, Inc.*, No. C-10-05545 RMW, 2012 WL 967968 (N.D. Cal. Mar. 21, 2012)..........................................................................7

*Parker v. Flook*, 437 U.S. 584 (1978)...............................................................................10

*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014)...............................................................3

## Statutes

35 U.S.C. § 101 ...............................................................................................................passim

35 U.S.C. § 103 .....................................................................................................................15

35 U.S.C. § 282 ...................................................................................................................8, 9

## Other Authorities

Gene Quinn, "The Ramifications of Alice: A Conversation with Mark Lemley," IPWATCHDOG (Sept. 4, 2014) ..................................................................................................................2

R. Sachs, "Patent Invalidity Rates: The Summertime Blues Continue" (Sept. 2, 2015)......................3

Tristan Gray-Le Coz & Charles Duan, "Apply It to the USPTO: Review of the Implementation of Alice v. CLS Bank in Patent Examination," 2014 PATENTLY-O PAT. L.J. 1 (2014)..................2

## Rules

FED. R. CIV. P. 12....................................................................................................................7

## I.     PRELIMINARY STATEMENT

Amazon's motion to dismiss basically argues that because many patents have been invalidated since *Alice and* Judge Moore predicted orders of magnitude more would be in her dissent in the Federal Circuit's *en banc* decision regarding *Alice*, the '751 patent in this action must be invalid.  But Judge Moore's hyperbolic rhetoric in her dissent is not law.  Indeed, the words of her colleagues against which she was railing are not now, nor were they ever, law.  The Supreme Court in *Alice* did not adopt the reasoning of any of the opinions in *en banc Alice*, and since none of the reasoning was supported by a majority of Federal Circuit judges, none had the force of law even before being obviated by the Supreme Court.  However, no one can deny that the Supreme Court's *Alice* opinion had a major impact on *both* the courts and the United States Patent and Trademark Office ("USPTO").  Amazon, however, completely ignores the impact on the USPTO.

The '751 patent has already run the post-*Alice* gauntlet at the USPTO and did so without a single new § 101 rejection.  The reason is simple.  The claims of the '751 patent are not addressed to an "abstract idea" and even if Amazon's alleged abstract idea were accepted, the claims include an inventive concept that distinguishes from that alleged idea.  Amazon's arguments to the contrary ignore the claim language, the specification and the prosecution history of the '751 patent.

## II.     NATURE AND STAGE OF PROCEEDINGS

On July 24, 2015, Plaintiff Kaavo Inc. ("Kaavo") filed a Complaint for infringement of U.S. Patent No. 9,043,751 (the "'751 patent") against Defendants Amazon.com, Inc. and Amazon Web Services, Inc. (collectively, "Amazon") (C.A. No. 1:14-cv-638-LPS).[1]  Amazon filed a

---

[1] Kaavo filed three other complaints asserting infringement of the '751 patent against different defendants.  (*See* C.A. No. 1:15-640-LPS-CJB, D.I. 1; C.A. No. 1:15-641-LPS-CJB, D.I. 1; C.A. No. 1:15-639-LPS-CJB, D.I. 1).  Also currently pending before the Court are four suits involving U.S. Patent No. 8,271,974, the parent of the '751 patent, and the same parties accused of infringing the '751 patent. (C.A. Nos. 1:14-cv-353-LPS, 1:14-cv-1191-LPS-CJB, 1:14-cv-1193-LPS-CJB, 1:14-cv-1192-LPS-CJB.)

motion to dismiss under Rule 12(b)(6) for failure to claim patent eligible subject matter under 35 U.S.C. § 101 (D.I. 13) (the "Motion") on September 25, 2015.  Kaavo submits this opposition in response to Amazon's Motion.

## III.   SUMMARY OF THE ARGUMENT

1.      The claims of the '751 patent do not cover an abstract concept.  The claims are directed to a narrow solution to a new computing problem just like the claims found to be patent eligible in *DDR Holdings v. Hotels.com*.

2.      Even if Amazon's abstract concept were accepted, its lawyer asserted facts of "routine" and "conventional" should be rejected as inconsistent with the prosecution history and Amazon's own documents.  The claims are patent eligible because they possess an inventive concept; are "more than a drafting effort designed to monopolize" the abstract idea; "improve an existing technological process," or supply a "'new and useful application' of the idea."

3.      The claims of the '751 patent are not overly preemptive and are patent eligible.

## IV.   STATEMENT OF FACTS

On June 25, 2014, less than a week after the Supreme Court's *Alice* decision, the USPTO issued new preliminary examination guidelines in light of that decision.  Exh. A.[2]  These guidelines were taken seriously by the USPTO examiners.  As reported by many commentators, not only were there a rash of new § 101 rejections, previously issued notices of allowances were withdrawn and allowed patents where issue fees had already been paid were withdrawn from issue.[3]  The USPTO has continued since then to work with the legal community to refine these guidelines and provide

---

[2]  Exhibits cited in this brief are attached to the co-filed Declaration of Richard C. Weinblatt in Support of Plaintiff Kaavo Inc.'s Opposition to Amazon's Motion to Dismiss.

[3]  *See* Tristan Gray-Le Coz & Charles Duan, "Apply It to the USPTO: Review of the Implementation of Alice v. CLS Bank in Patent Examination," 2014 PATENTLY-O PAT. L.J. 1 (2014); Gene Quinn, "The Ramifications of Alice: A Conversation with Mark Lemley," IPWATCHDOG (Sept. 4, 2014) (available at http://www.ipwatchdog.com/2014/09/04/the-ramifications-of-alice-a-conversation-with-mark-lemley/id=51023).

further pedagogical examples.  *See* Exhs. B - C.  There can be no dispute that immediately after the Supreme Court's *Alice* decision, the USPTO got tough on "abstract ideas," as is clearly evidenced by the pre- and post-*Alice* § 101 rejection rates in e-commerce patent applications, which jumped from approximately 34% pre-*Alice* to 88% post-*Alice*.[4]  United States Patent No. 9,043,751, entitled "Methods and Devices for Managing a Cloud Computing Environment," issued May 26, 2015 – nearly a year after *Alice* – and is directed to a very specific way of provisioning a cloud-based computing system.  Exh. A.

Cloud computing is a fairly recent computer-science development and all definitions of "cloud computing" supported by the intrinsic record include the idea of "on-demand" resources.[5] For example, one of the cited prior art references defines "cloud computing" as including the providing of on-demand computing resources.[6]  *See e.g.*, Exh. E ("A computing Cloud is a set of network enabled services, providing scalable, QoS guaranteed, normally personalized, inexpensive computing platforms on demand . . . .").  This is consistent with the specification, which describes a "cloud environment configuration" (e.g., a virtualized finite set of computer resources) being "made available" in response to an "initialization event," Exh. A at 5:28-32, and after execution of the application is completed, those resources are "returned" to the general cloud environment (an effectively infinite set of computer resources).  *Id*. at 8:1-9.  As explained

---

[4]  R. Sachs, "Patent Invalidity Rates: The Summertime Blues Continue" (Sept. 2, 2015), (available at http://www.law360.com/articles/697396/patent-invalidity-rates-the-summertime-blues-continue).

[5]  The prosecution history of the '751 patent is properly before the Court in this motion as a matter of public record that is judicially noticeable.  *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (matters of public record, such as records of a government agency, may be judicially noticed in a motion to dismiss).

[6]  Amazon's own documents also define "cloud computing" as requiring "on-demand" computer resources.  Exh. D ("What is Cloud Computing?  'Cloud computing', ***by definition, refers to on-demand delivery*** of IT resources and applications via the Internet with pay-as-you-go pricing." (emphasis added).)

in the prosecution history, the claimed "cloud environment" would be understood by one of ordinary skill in the art to be "fundamentally different" from a conventional finite network, such as a computing center/datacenter, as discussed throughout Amazon's motion:

> [A] cloud environment would be understood by those of ordinary skill in the art to be a ***fundamentally different*** environment from the environment of a known set of finite computing resources associated with a computing center/datacenter . . . .

Exh. F at 7-8 (emphasis added).  Similarly, the prosecution history explains that conventional techniques used with finite resources "cannot merely be applied" to a cloud environment:

> [S]omeone of average skill in the art would understand that the technology associated with computer center/datacenter management ***cannot merely be applied to cloud computing***.

*Id.* (emphasis added).  These statements from an inventor declaration, *see* Exh. F-1, in the prosecution history were never rebutted by the examiner and must, on a motion to dismiss, be taken as true.

Claim 11 of the '751 patent, which Amazon asserts is representative (D.I. 14 at 4, 6), is found at column 20, lines 31-45.  Exh. A at 20:20-45.  In the first step of claim 11, a computer system must send an "initialization event."  In response to this "initialization event," a "cloud environment configuration" is made available to a software application.  The "cloud environment configuration" is effectively a virtual server that is made available on-demand to an application from a subset of the potentially accessible resources, "collectively referred to as a 'cloud computing environment.'"  (*Id.* at 1:14-36, 5:9-17, FIG. 1.)  The "cloud environment configuration" 110 is shown as a virtual subset of the larger "cloud environment" 100 in Figure 1.  (*Id.* at FIG. 1.)



FIG. 1

As explained in the prosecution history, such an "initialization event" is unique to cloud computing and is not required for conventional networks:

> In addition, the present claims require an initialization event . . . that causes two or more tiers of a cloud environment configuration to be made available to a software application. ***Such an initialization event is unnecessary for*** both Dusse and Siripunkaw because the purportedly provisioned devices (i.e., two-way mobile device or cable modem) of the cited art are ***tangible devices that exist in the real world prior to the provisioning*** and are available for any process described by Dusse or Siripunkaw, respectively without the need for an initialization event like the one claimed.

Exh. G at 7 (emphasis added).  The specification explains the "initialization event" is typically executed through application programming interface (API) calls.  Exh. A at 5:54-57.

The first step of claim 11 is also further limited such that the "initialization event" must be based on provisioning information that is contained "in a single file" and that the "cloud environment configuration" that is generated in response to the "initialization event" must have "two or more tiers."  As explained, "tiers" are "logical groupings of components directed to a general type of functionality."  *Id.* at 5:32-36.  The second step of claim 11 requires that after the virtual "cloud environment configuration" is generated, "software application data" is sent to it, which then causes "execution in the available tiers" of the cloud environment configuration.  As described and claimed, the "execution in the available tiers" is in response to provisioning information in the "single file" regarding "the types of servers to launch in each tier."

The final "wherein" clause of claim 11 restricts the type of provisioning information that must be included in the "single file" used to generate the "initialization event."  In particular, five different types of provisioning information must be included in that single file:  1) "types of servers to launch in each tier"; 2) "geographic data"; 3) "security requirement data"; 4) "pricing preference data"; and 5) "versioning data."  *Id.* at 20:42-45.  These required sets of provisioning information are based on a sub-set of the examples of provisioning information provided in the

5

specification.  *Id.* at 6:47-59.  Notably, during prosecution of the '751 patent, the examiner found that this particular list of types of provisioning information distinguished the claims over the prior art of record.  Exh. H.

The claims not only specify the required provisioning information and configuration requirements for a N-tier cloud environment, but their complexity is articulated in the specification in the form of an exemplary coded configuration file describing a three tier cloud environment configuration.  The tiers include a web tier (Exh. A at 17:24 ("<tier>") - 17:43 ("</tier>")) with an apache load balancer server, and an application tier (*id.* at 17:44 ("<tier>") - 17:63 ("</tier>")) comprising a Jboss node as an application server.  A database tier (*id.* at 17:64 ("<tier>") - 18:46 "</tier>")) includes three different servers – one manage and two data nodes.  The configuration file also includes security information for each tier (*id.* at 17:26) and firewall rules for the application tier (*id.* at  17:45) to allow only authorized access to the servers.

As noted in Amazon's brief – but not addressed – claim 1 of the '751 patent includes additional limitations not found in claim 11.  (D.I. 14 at 6, n.15.)  In particular, claim 1 includes a "wherein" clause further limiting the "cloud environment" from which the virtual "cloud environment configuration" is generated to include multiple "cloud providers" and specifying additional information to be included in the "initialization event" to address this more complex environment.  Exh. A at 18:56-67.  This clause addresses the added complexity that arises from generating a virtual "cloud environment configuration" using multiple "cloud providers."  In that regard, the intrinsic prosecution record includes a quotation from the editor of "Information Week," that "Kaavo is moving quickly to address what is likely to be a growing need as more companies plug into not just one, but a variety of cloud services."  Exh. K at Slide 15.

## V.    LEGAL STANDARD

### A.    Rule 12(b)(6) Motion

In deciding Rule 12(b)(6) motions, courts look at the allegations of the complaint to determine if "enough facts to state a claim to relief that is plausible on its face" are alleged, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Complaints are not to be dismissed "unless 'it appears to be a certainty that the plaintiff cannot possibly be entitled to relief under any set of facts which could be proved in support of its allegations. Even then, a court ordinarily should not dismiss the complaint except after affording every opportunity (for) the plaintiff to state a claim upon which relief (can) be granted.'" *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (quoting *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955)).

### B.    Defendants' Clear and Convincing Burden of Proof

The U.S. Supreme Court ruled in *Commil USA, LLC v. Cisco Systems, Inc.*, 135 S. Ct. 1920 (2015), that the clear and convincing evidentiary standard applies to all challenges to a patent's validity. *Id.* at 1928-29 (citing 35 U.S.C. §§ 100–212, 282). This burden of proof remains on Amazon and Kaavo never bears the burden of proving validity. *Harrington Mfg. Co. v. Powell Mfg. Co.*, 815 F.2d 1478, 1482 (Fed. Cir. 1986); *see also Nazomi Communications, Inc. v. Samsung Telecommunications, Inc.*, No. C-10-05545 RMW, 2012 WL 967968 at *3 (N.D. Cal. Mar. 21, 2012) ("[I]t is not sufficient to show that a type of claim has never specifically been upheld; rather [Defendants] must demonstrate that the claims fall within one of the exceptions to '§ 101's broad patent eligibility principles,' [*Bilski v. Kappos*, 561 U.S. 593, 601-02 (2010) ("*Bilski II*")].").; *Abbot Labs v. Sandoz, Inc.*, 544 F.3d 1341, 1346 (Fed. Cir. 2008) ("'The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such

invalidity.' . . . This burden '*exists at every stage of the litigation*.'" (emphasis added)).[7]

While the determination of whether an asserted claim is invalid for lack of subject matter patentability under 35 U.S.C. § 101 is a question of law, *In re Bilski*, 545 F.3d 943, 950 (Fed. Cir. 2008) ("*Bilski I*"), the question may involve several factual underpinnings. *See In re Comiskey*, 554 F.3d 967, 975 (Fed. Cir. 2009) (noting that "the legal question as to patentable subject matter may turn on subsidiary factual issues").

### C.    Patentability Under 35 U.S.C. § 101

Only three narrow exceptions to the broad patent-eligibility principles of 35 U.S.C. § 101 exist – "laws of nature, physical phenomena, and abstract ideas." *Bilski II*,  561 U.S. at 601-02. The Supreme Court has never provided clear guidance as to what constitutes an "abstract idea." *Id*. at 621 (Stevens, J., concurring), but it did reiterate its reluctance to broadly apply these three narrow exceptions:    "[W]e tread carefully in construing this exclusionary principle, lest it swallow all of patent law.  At some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (quoting *Mayo Collaborative Services v. Prometheus Labs., Inc.* 132 S. Ct. 1289*,* 1293 (2012) (internal citation omitted)).[8]

The appropriate analysis of whether a claim satisfies § 101 requires viewing the claim *as a whole*, *Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981), and not individual limitations. *King*

---

[7]   The "clear and convincing" burden of proof must be met independently for each claim because "[e]ach claim carries an independent presumption of validity, 35 U.S.C. § 282, and stands or falls independent of the other claims." *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1266-67 (Fed. Cir. 1991) (citing *Altoona Publix Theatres, Inc. v. American Tri-Ergon Corp.*, 294 U.S. 477, 487 (U.S. 1935)).

[8]   The Federal Circuit held a patent claim should not be found to be for an unpatentable abstract idea unless that abstractness "exhibit[s] itself *so manifestly* as to override the broad statutory categories of eligible subject matter." *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 868 (Fed. Cir. 2010) (emphasis added).  Further, "inventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract that they override the statutory language and framework of the Patent Act." *Id.* at 869.

*Pharms., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1277 (Fed. Cir. 2010) ("The Supreme Court has stated that a § 101 patentability analysis is directed to the claim as a whole, not individual limitations."). By definition, "each claim must be considered as defining a separate invention." *Jones v. Hardy*, 727 F.2d 1524, 1528 (Fed. Cir. 1984) (citing 35 U.S.C. § 282). "[I]t is irrelevant that any individual step or limitation of such processes by itself would be unpatentable under § 101." *In re Bilski*, 545 F.3d 943, 958 (Fed. Cir. 2008) ("*Bilski I*").

"[T]he concern that drives" § 101 jurisprudence is "one of pre-emption." *Alice*, 134 S. Ct. at 2354; *see also Bilski II*, 561 U.S. at 611-12 (finding claims covered ineligible subject matter because they "would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea."). Claims – even ones directed to abstract ideas – are patentable where the claim (i) contains an "inventive concept," *Alice*, 134 S. Ct. at 2357; (ii) is "more than a drafting effort designed to monopolize" the abstract idea, *id.* at 2358 (quotation omitted); (iii) "improve[s] an existing technological process," *id.*; or (iv) supplies a "'new and useful application' of the idea." *Id.* at 2357 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

## VI.    ARGUMENT

### A.    The '751 Patent Claims Are Patentable Under the *Alice* Framework

In *Alice*, the Supreme Court formalized a framework to determine whether a patent claims a judicial exception (i.e., an abstract idea, natural phenomenon, or law of nature). 134 S. Ct. at 2355. Under the *Alice* test, a court must first ask "whether the ***claims*** at issue are ***directed to*** one of those patent-ineligible concepts"; if so, then the court must ask, "[w]hat else is there in the claims before us?" *Id.* (emphasis added). While the Supreme Court did not explicitly define the phrase "directed to," the wording of the *Alice* test confirms that the focus must be on what is *actually* claimed, not a

single element of a claim.[9]

When the facts are viewed, as they must be on a Rule 12 motion, in the light most favorable to Kaavo, there are meaningful limitations that preclude the '751 patent from impermissibly preempting "the basic tools of scientific and technological work" and "thereby thwarting the primary object of the patent laws."  *Alice*, 134 S. Ct. at 2354 (quoting *Association for Molecular Pathology v. Myriad Genetics*, Inc. 133 S. Ct. 2107, 2116 (2013)).  Amazon seeks to have the Court accept its uncorroborated factual allegations that amount to nothing more than bare bones attorney argument, and that contradict the intrinsic record of the '751 patent when asserting the claims were "well-known," "routine" or 'conventional."  It also presents no evidence that the properly construed claims of the '751 patent would preempt the field and grant Kaavo a monopoly over an abstract idea. Accordingly, Amazon has failed to meet its clear and convincing burden of proof that the claims of the '751 patent are invalid under § 101.

### 1.    The Claims of the '751 Patent Are Not Directed to an Abstract Idea

Amazon varyingly mischaracterizes the '751 patent as claiming the "abstract idea" of "setting up and managing a collection of generic computers" (D.I. 14 at 3), or "setting up and managing a computing environment." (*Id.* at 4.)  In its discussion of the independent claims of the '751 patent, Amazon does not view each claim as a whole, but rather chooses to focus on individual actions in the claim limitations that Amazon then characterizes as "routine" or "conventional" without citing to any evidence to support its characterizations.  (*Id.* at 8-13.)

The '751 patent's claims are not directed to an abstract idea, but instead claim specific improved methods for provisioning a specific type of cloud computing environment.   Cloud computing itself is a fairly recent computer development, and, as explained in the prosecution

---

[9] The claim focus of the *Alice* test codifies earlier Supreme Court decisions.  *See, e.g., Parker v. Flook*, 437 U.S. 584, 594 (1978) ("Our approach . . . is however, not at all inconsistent with the view that *a patent claim must be considered as a whole.* ")

history, "a cloud environment would be understood by those of ordinary skill in the art to be a ***fundamentally different*** environment from the environment of a known set of finite computing resources associated with a computing center/datacenter." Exh. F at 7 (emphasis added). As such, the claims of the '751 patent are very similar to the claims at issue in *DDR Holdings,* which were found not to be directed to an abstract idea because "the claimed solution [wa]s clearly rooted in computer technology in order to overcome a problem ***specifically arising in the realm of computer networks***." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) (emphasis added). Here, the claims are more than rooted in computer technology – deploying an application over an N-tier cloud environment configuration that is generated via an initialization event based on specific provisioning information.

Similarly, as stated in the '751 patent, "[t]he present methods, devices, and systems relate generally to the fields of computers, information technology, virtualization, ***and cloud computing***." Exh. A at 1:14-16 (emphasis added). The claims of the '751 patent solve a difficult problem of executing an application based on specific requirements (type of server, pricing, security, geography, and versioning) using an on-demand configuration of virtual assets from a cloud provider (claim 11) or multiple cloud providers (claim 1) in a N-tier cloud computing environment, where available resources are effectively infinite and must be virtually and logically assigned for each specific application.[10] As claimed in claim 11, this is accomplished by using an initialization event that is controlled by a single, specifically coded file that determines, based on the provisioning information, which cloud resources to access for each tier (*e.g.,* web, application, or

---

[10] Claims 5 and 8 are not abstract for at least the same reasons as claim 1. Claims 15 and 20 are not abstract for at least the same reasons as claim 11. Claim 2 (monitoring environment data about a current cloud environment state), claim 3 (adjusting the state of the cloud configuration based on the monitor data), and claim 4 (provisioning information includes a service level agreement) are also not abstract. The dependent claims 6-7, 9-10, 12-14, 16-17, and 19-20 that correspond to claims 2-4 are equally not abstract for at least the same reasons.

database tier) and the number of servers in each tier. The single file is advantageously used to track the varying operational requirements for each cloud provider to ensure application is able to execute properly. Such an initialization event and file are unnecessary for an environment of a known set of finite computing resources, such as the typical data network in Amazon's hypotheticals. In such systems, the capabilities of such resources known and their tangible devices already logically exist in the real world. In contrast, the resources (e.g. servers) for an application in the claims of the '751 patent do not yet exist and must be instantiated based on specific provisioning information, as taught and claimed in the '751 patent. Exh. F at 7-8.

Amazon cites to and quotes *DDR Holdings*, but makes no attempt to actually distinguish the claims at issue here from the similar claims at issue there. Instead, Amazon dismisses *DDR Holdings* out of hand, because Kaavo's counsel allegedly admitted that "setting up and managing a computing environment is an abstract idea." (D.I. 14 at 10.) First, Amazon crops and mischaracterizes Kaavo's counsel's statement, which in full was:

> THE COURT: Now, the abstract idea, as the defendants have called it out, although it's been clarified by Mr. Johnson is 'setting up and managing a computing environment.' Would you acknowledge that [] the abstract idea, ***phrased that way***, is, in fact, an abstract idea?
> MR. WEINBLATT: In the way that he phrased it, yes, but that ***is ignoring claim elements.***

Exh. J at 61:2-12 (emphasis added). Second, it is completely untethered to the language of the claims. At best, it merely proves what the Supreme Court has routinely cautioned: "[A]ll inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo*, 132 S. Ct. 1289 at 1293. Indeed, the defendants in *DDR Holdings* similarly proposed a series of potential abstract ideas, all of which were rejected by the Federal Circuit since they ignored the actual language of the claims. *DDR Holdings*, 773 F.3d 1245 at 1257-58.

12

In stark contrast, the examples in Amazon's history of computing lesson (D.I. 14 at 9-10), were not only overcome by the Applicant in prosecution, but also it was well explained *by one of ordinary skill in the art* that the management of a finite set of resources is "fundamentally different" and less complex than efficient virtual resource management methods covered by the claims of the '751 patent.  Exh. F at 7-8.

Amazon's analysis of Step 1 of *Alice* is even more anemic regarding claim 1 of the '751 patent.  While Amazon acknowledges that claim 1 includes additional substantive limitations not found in claim 11 (D.I. 14 at 11, n.33), it does not address these additional limitations at all under Step 1.  (*Id.* at 9-11.)  These limitations include:

- wherein the cloud environment comprises a plurality of distinct cloud configurations, each cloud configuration provided by a unique cloud provider, and multiple tiers of computing facilities, each tier being characterized by logical groupings of components directed to a general type of functionality, wherein each cloud provider's cloud configuration contributes all, a portion, or none of each individual tier of the N-tier cloud environment, and the initialization event includes information specifying different cloud configurations of each of the different cloud providers to launch in each tier.

These limitations further narrow the "claimed solution . . . to overcome a problem specifically arising in the realm of computer networks."  *DDR Holdings*, 773 F.3d at 1257.

### 2.    The '751 Patent's Claims Provide a Patent-Eligible Inventive Concept

Even if the claims were directed to an abstract idea (which they are not), Step 2 of *Alice* next requires "consider[ing] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."  *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. at 1297).  Amazon's arguments rely on a combination of both a misapplication of the Supreme Court's precedent[11] and conclusory lawyer argument regarding what is "conventional" or "routine."[12]

---

[11] The Supreme Court has consistently held that its seminal cases (*Diehr*, *Chakrabarty*, etc.) remain good law, in its limitation of its holdings to the "particular claims before us," and in its

However, when the claims as a whole are looked at as required by *Diehr*, Amazon's lawyer arguments fall away, and Amazon's own statements regarding the accused product and service in this case conclusively show that the claims contain an inventive concept.

As described in the Complaint, the Amazon product and service accused of infringement is called "AWS CloudFormation," which was introduced years after the 2008 filing of the application that led to the '751 patent.  (D.I. 1 at ¶ 22)  Amazon's own FAQs regarding this product claimed it introduced two new concepts:  the "template" and the "stack."

Q: What new concepts does AWS CloudFormation introduce?

AWS CloudFormation introduces two concepts: The *template*, a JSON-format, text-based file that describes all the AWS resources you need to deploy to run your application and the *stack*, the set of AWS resources that are created and managed as a single unit when AWS CloudFormation instantiates a template.

Exh. K (emphasis in original).  Amazon's "template" clearly corresponds to the "single file" of claim 11 that includes provisioning information.  Amazon's "stack," which it describes as "a collection of AWS resources that you can manage as a single unit", Exh. L, clearly corresponds to the claimed multi-tiered "cloud environment configuration."  Indeed, Amazon provides an example template called "multi-tier-web-app-in-vpc.template" whose function is to "[c]reate a multi-tier web application in a VPC with multiple subnets."   Exh. M.  In summary, what Amazon's lawyers now call "conventional" and "routine," Amazon itself called "new concepts," years after the '751 patent was filed.  This Court can and should rely on these statements from Amazon itself, not only because they contradict the lawyer-created factual assertions of "conventional" and "routine," but also because these admissions are contained in documents that

---

repeated admonitions to interpret those holdings narrowly, lest they "eviscerate patent law." *Mayo*, 132 S. Ct. at 1293-94; *see also Myriad Genetics*, 133 S. Ct. at 2119-2120 ("It is important to note what is not implicated by this decision . . . .").

[12] Amazon ignores the case most directly on point (*Diehr*), misinterprets the framework of *Mayo*, and circumvents the required analysis by never addressing the claims as a whole.

are indisputably authentic – the Court can get them from Amazon's website.  *See Morgan v. Scott*, 83 F. Supp. 3d 616, 621 (D. Del. 2015) ("[A] district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment.").

Amazon's analysis of the "additional limitations" of claim 1 under Step 2 of the *Alice* test is also deficient.  Amazon relegates to a footnote the conclusory allegation that all of those limitations are "conventional" or "routine."  (D.I. 14  at 11, n.33.)  There is simply no basis on which the Court could conclude the provisioning of virtual resources from multiple cloud providers in the manner prescribed in claim 1 is conventional or routine.  Further, *Diehr* expressly rejected the rigid "additional elements" approach that Amazon seeks to have the Court apply here.  450 U.S. at 189, n.12. Were Amazon's interpretation correct, it would mean that claims that contain an "inventive step" for purposes of 35 U.S.C. § 103 (i.e., are non-obvious) may nevertheless lack an "inventive concept" for purposes of § 101.[13]   However, the Supreme Court in *Diehr* left no room for an interpretation of § 101 that requires more than § 103:

> [I]t may later be determined that the [claimed] process . . . fails to satisfy . . . novelty § 102 or nonobviousness under § 103.  A rejection on either of these grounds does not affect the determination that [the] claims recited subject matter . . . eligible for patent protection under § 101.

450 U.S. at 191.  In Amazon's view, without relying on or citing to any evidence, the claims set forth in the '751 patent are not patent-eligible in 2008 because the steps in general were well-

---

[13] The existing § 101 case law has yet to fully develop the confines of what constitutes an "inventive concept."  But whatever such a test requires, it most certainly cannot be more than the level of inventiveness required to satisfy § 103.  This is clear from the language of § 101 itself:  "Whoever invents or discovers ***any*** new and useful process [etc.] . . . may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101 (emphasis added).  It is also clear from Congress' mandate that this Section be construed as liberally as possible and from the Supreme Court's reminder that § 101 is a "threshold," a "general statement" of the categories of only "*possibly* patentable subject matter."  *Diehr*, 450 U.S. at 189 (emphasis added).

known by that time.  But implicit in this reasoning is that the claims would be patent-eligible if the steps were new.  While these opposite results may be reconcilable through principles of novelty and obviousness, they should not be reconciled – and logically cannot be – under § 101 or through the judicial exceptions that define its bounds.

In addition, Amazon misunderstands what it means for a method's steps to be "routine," "conventional" or "well-understood."  In *Diehr*, 450 U.S. at 181, the Supreme Court held that a new combination of steps leading to a new practical result is eligible for a patent even if the individual steps were known beforehand and the core of the invention is an unpatentable natural law or formula.  *Mayo*, in turn, reaffirmed this aspect of *Diehr*.[14]  132 S. Ct. at 1298-99.  In holding the claims in *Mayo* were unlike those in *Diehr*, the Supreme Court stressed that the three steps of the method claims in *Mayo* considered together merely specified "well-understood, routine, conventional activity *previously engaged in by those in the field*," 132 S. Ct. at 1299 (emphasis added), and that "[t]he process in *Diehr* was not so characterized."  *Id*.  The "conventional activities" in *Mayo* were the very steps that doctors were already doing – administering the drug at issue, measuring metabolite levels and adjusting dosing based on them.[15]  By contrast, the method in this case is just like that in *Diehr*, and not at all like that in *Mayo*:  The problems with the prior art motivated the inventors to devise a new method that no one was practicing, and whose combined

---

[14] The Supreme Court explained "[i]t is inappropriate to dissect the claims into old and new elements and then to ignore the presence of the old elements," and "[t]his is particularly true in a process claim because a new combination of steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination was made."  *Diehr*, 450 U.S. at 188.  *Diehr* emphasized that the patent there did "not seek to pre-empt the use of th[e] [unpatentable] equation," but "only to foreclose from others the use of that equation in conjunction with *all of the other steps* in their claimed process."  *Id*. at 187 (emphasis added).  To that end, *Diehr* was emphatic that "[i]n determining the eligibility of respondents' claimed process . . . under § 101, their claims must be considered as a whole."  *Id*. at 188.

[15] Accordingly, the claims in *Mayo* did not actually change the conventional method in any way other than telling doctors to consider the natural phenomenon itself.

steps were in fact the opposite of the "conventional" approach, even if each individual technique involved was "well-understood" on its own.[16]  *Mayo* and *Alice* both require analyzing claim steps as an "ordered combination" rather than in isolation, and here the ordered combination of claim steps was neither routine nor conventional.  In effect, Amazon views the steps in the claims as being known in the prior art.  But they were not known, and that fact must not be disregarded.[17]

Amazon's conclusory remarks regarding its position on inventive concept prove little.  As made clear during prosecution, the '751 patent claims differ from prior art computing techniques and allow for execution of an application based on specific requirements (type of server, pricing, security, geography, and versioning) using an on-demand configuration of virtual assets from a cloud provider (claim 11) or multiple cloud providers (claim 1) in a N-tier cloud computing environment, where available resources are effectively infinite and must be virtually and logically assigned for each specific application. This is accomplished by an initialization event – a specifically coded file that determines, based on the provisioning information, which cloud resources to access for each tier (*e.g.,* web, application, or database tier) and the number of servers in each tier.  As explained, such an initialization event and file are unnecessary for an environment of a known set of finite computing resources, such as the typical data network in

---

[16] Focusing on the unconventional nature of the *combined* method is absolutely critical for the reasons explained in *Diehr*.  Every method is a combination of known techniques – indeed, if one of the techniques was itself previously unknown, it would be a *separate* patentable invention. What makes such a combination patent eligible when it relies for its components on known steps and unpatentable insights into an abstract concept is that the steps "considered as a whole [are] performing a function which the patent laws were designed to protect."  *Diehr*, 450 U.S. at 192.

[17] In *Diehr*, the dissenting Justices argued that a natural law (or phenomenon) should be "treated for § 101 purposes as though it were a familiar part of the prior art."  450 U.S. at 204, 216 (Stevens, J., dissenting).  But the majority rejected that approach, emphasizing that "[i]t was inappropriate to dissect the claims into old and new elements and then ignore the presence of the old elements in the analysis."  *Id.* at 189 (further noting, in n.12, that the dissenters' approach "would, if carried to its extreme, make all inventions unpatentable because all inventions can be reduced to underlying principles of nature which, once known, make their implementation obvious.").  Nothing in *Mayo* or *Alice* reversed that principle.

Amazon's hypotheticals.  Exh. F at 7-8.  Thus, the '751 patent's claims are patent eligible.

Finally, Amazon's overbroad assertion of the alleged abstract idea ("setting up and managing a computing environment") dooms its inventive concept analysis.  The Federal Circuit has found a patent claim ineligible where it "contains no restriction on how the result is accomplished."  *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015.  The '751 patent claims do not simply claim the result of "setting up and managing a computing environment."  For example, claim 11 calls out specific limitations directed to *how* the result is accomplished, namely, by use of providing an "initialization event based on provisioning information" in "a single file" that causes "two or more tiers of a cloud environment configuration to be made available to a software application," where the provisioning information includes "types of servers to launch in each tier, geographic data, security requirement data, pricing preference data, and versioning data."

### B.    The Claims of the '751 Patent Are Not Overly Preemptive

Although *Mayo* and *Alice* refer to "transformation" and "conventionality," the point was not to analyze those concepts for their own sake. Instead, the critical question is whether a patent impermissibly claims and prevents others from using a natural phenomenon, law of nature or abstract idea itself, or instead permissibly claims a practical *application* of one of those things.[18] *Compare Mayo*, 132 S. Ct. at 1305 (holding claims to a method of medical treatment invalid

---

[18] The Supreme Court has consistently recognized that *practical applications* of natural phenomena, laws of nature and abstract ideas are patent-eligible.  *See, e.g., Association for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107 (2013) (cDNA held patent-eligible even though isolated, naturally occurring DNA segments were not); *Diamond v. Diehr*, 450 U.S. 175 (1981) (method of curing rubber was patent-eligible even though it relied in part on a law of nature, the Arrhenius equation); *Diamond v. Chakrabarty*, 447 U.S. 303 (1980) (genetically engineered bacterium capable of breaking down crude oil was patent-eligible even though naturally-occurring bacteria were not); *Mackay Radio & Tel. Co. v. Radio Corp. of Am.*, 306 U.S. 86 (1939) ("While a scientific truth, or the mathematical expression of it, is not patentable invention, a novel and useful structure created with the aid of knowledge of scientific truth may be.").

because they "effectively claim[ed] the underlying laws of nature themselves"), *with id.* at 1298-99 (contrasting *Diehr*, in which the patentees did not "seek to pre-empt the use of [the Arrhenius] equation" but instead "transformed the process into an inventive application of the formula" and sought "only to foreclose from others the use of that equation in conjunction with all of the other steps in their claimed process").

Amazon erroneously applies the *Mayo* framework in a mechanical manner, ignoring the goal of the inquiry – to determine if the claims include enough "something more" to avoid preempting the fundamental principle in question. This type of rigid analysis of patent-eligibility frameworks was rejected in *Bilski v. Kappos*, 561 U.S. 593 (2010), and is likewise incorrect here. Moreover, the Supreme Court has held:

> In applying the § 101 exception, we must distinguish between patents that claim the "'buildin[g] block[s]'" of human ingenuity and those that integrate the building blocks into something more, Mayo 566 U.S., at ___, 132S. Ct. at 1303, thereby "transform[ing]" them into a patent-eligible invention, id., at ___, 132 S. Ct. at 1294. … ***The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws.***

*Alice*, 134 S. Ct. at 2354-55 (emphasis added).[19] That Amazon presents no evidence that the claims of the '751 patent unduly preempt use of patent-ineligible subject matter is relevant to the analysis of the claimed invention's patent eligibility.

In setting forth their new method for applying their discovery regarding cloud computing, the inventors of the '751 patent did not claim other ways of applying the discovery that other inventors might later invent. This "preemption" concern was manifestly a motivating factor in the *Mayo* decision; the absence of such preemption here is an extremely strong indication that the patentee is claiming limited practical *applications* of a purportedly abstract idea, and not the

---

[19] The Supreme Court necessarily agreed that conventional tools, employed in a novel combination configured to utilize a natural phenomenon, can be patent-eligible in *Funk Brothers Seed Co. v. Kalo Co.*, 333 U.S. 127 (1948), by citing *Cameron Septic Tank Co. v. Village of Saratoga Springs*, 159 F. 453 (2d Cir. 1908), with approval, *see* 333 U.S. at 130.

alleged abstract idea itself.

The claims of the '751 patent teach a very specific way for managing a cloud computing environment by providing an initialization event based on provisioning information in a single file that causes two or more tiers of a cloud environment configuration to be made available to a software application.  The provisioning information includes types of servers to launch in each tier, geographic data, security requirement data, pricing preference data, and versioning data. Clearly there are myriad ways of implementing Amazon's alleged abstract idea of "setting up and managing a computing environment" that are not foreclosed by the '751 patent claims.[20]  Indeed, Amazon has *not* alleged that it cannot achieve the result of "setting up and managing a computing environment" without infringing the '751 patent – a fact fatal to its motion.

### C.   The Claims of the '751 Patent Improve an Existing Technological Process and Supply a New and Useful Application of the Idea

The claims of the '751 patent improve the use of a cloud computing environment leveraging the virtually infinite resources of a cloud environment (claim 11) or distinct cloud configurations from unique cloud providers (claim 1) to create a N-tier cloud environment configuration for use by an application.   Additionally, an initialization event allows cloud configurations of each of the different cloud providers to launch in each tier.   The supported provisioning information includes the types of servers to launch in each tier, geographic data, security requirement data, pricing preference data, and versioning data – a combination that was found during prosecution to be unknown in the prior art.  Exh. H.

### VII.   CONCLUSION

For the foregoing reasons, Amazon's Motion should be denied.

---

[20] Even in cloud computing, to which Amazon's proposed abstract concept is not limited, one could use a single-tier configuration or a subset of or different provisioning information than the five specific types claimed.

Dated:  October 13, 2015               STAMOULIS & WEINBLATT LLC

*/s/ Richard C. Weinblatt*
Stamatios Stamoulis #4606
Richard C. Weinblatt #5080
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone:  (302) 999-1540
stamoulis@swdelaw.com
weinblatt@swdelaw.com

*Attorneys for Plaintiff*
*Kaavo Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 13, 2015, I electronically filed the above document(s) with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to all registered counsel.

<u>*/s/ Richard C. Weinblatt*</u>
Richard C. Weinblatt #5080